1  Mark A. O'Connor, Esq. #148856
   LAW OFFICES OF MARK A. O'CONNOR
2  A Professional Corporation
   100 Clock Tower Place, Suite 110
3  P.O. Box 221190
   Carmel, CA  93922-1190
4  Telephone:     (831) 250-7011
   Facsimile:     (831) 886-1688
5
   Attorneys for Plaintiff and Relator
6  CAROLINA MARION

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11
   UNITED STATES OF AMERICA, *ex rel.*        Case No.  CV12-02067 -PSG
12 CAROLINA MARION,
                                              **OPPOSITION   TO   MOTION   TO**
13           Plaintiff,                       **DISMISS**

14 v.
                                              Date:         May 5, 2015
15 HEALD COLLEGE, LLC; CORINTHIAN            Time:         10:00 a.m.
   COLLEGES,  INC.;  EEVA  DESHON;            Courtroom:    5
16 BARBARA GORDON; TERRY RAWLS;
   KAREN ROSE,
17
             Defendants.
18 _____/

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page No.</u>

3  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

4  I.  INTRODUCTION .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5  II.  THE SCHEME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6  III.  THE REQUIREMENT OF RULE 9b IS MET BY MARION . . . . . . . . . . . . . . . . . . . . . 3

7  IV.  MARION STATES A CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8  V.  MARION STATES A VALID CLAIM FOR ENROLLMENT FRAUD .. . . . . . . . . . . . 10

9  VI.  DEFENDANTS' FIRST-TO-FILE ARGUMENT FAILS . . . . . . . . . . . . . . . . . . . . . . . 11

10  VII.  A RULING ON THE FIRST-TO-FILE BAR SHOULD AWAIT

11  A DETERMINATION ON THE MOTION TO CONSOLIDATE

12  MULTIPLE *QUI TAM* CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

13  VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

<u>CASES</u>

*Campbell  ex rel.  United States v.  Redding Medical Center,*
    421 F.3d 817, 822-825 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ebeid v. Lungwitz,*
    616 F3d 993, 997, 998, 999 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 10

*Hagood v. Sonoma County Water Agency,*
    81 F.3d 1465, 1467 n. 1 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hendow v.  University of Phoenix,*
    461 F.3d 1166, 1170, 1171, 1174-78 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*In re Cardiac Devices Qui Tam Litigation,*
    254 F.Supp.2d 1370, 1372 (J.P.M.L. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Kaplan Higher Education Corp. Qui Tam Litigation,*
    626 F.Supp.2d 1329 (J.P.M.L. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Silicon Graphics Inc. Securities Litigation,*
    183 F.3d 970, 986 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*United States ex rel. Hagood v. Sonoma County Water Agency,*
    929 F.2d 1416, 1421 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States ex rel. Ruhe v. Masimo Corp.,*
    977 F.Supp.2d 981, 991 (C.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Walburn v.  Lockheed Martin Corp.,*
    431 F.3d 966, 971, 972 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## <u>CODES, STATUTES AND OTHER AUTHORITIES</u>

34 C.F.R. § 668.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

34 C.F.R. § 668.14(a)(1) and (b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Fed. R. Civ. P. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20 U.S.C. § 1094(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9

28 U.S.C. § 1407(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

31 U.S.C. § 3729(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

31 U.S.C. § 3729(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Page No.**

31 U.S.C. § 3729(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

31 U.S.C. § 3729(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

31 U.S.C. § 3729(a)(1)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

31 U.S.C. § 3730(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

31 U.S.C. § 3730(e)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

31 U.S.C. § 3729(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

31 U.S.C. § 3729(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# I.  INTRODUCTION.

This case involves allegations under the False Claims Act that Heald College knowingly made false promises to comply with United States government mandated restrictions in order to be eligible to receive Title IV funds under the Higher Education Act ("HEA").  Plaintiff and relator Carolina Marion, the former senior registrar at the Salinas campus of Heald College alleges that Heald College and Corinthian Colleges, Inc. engage in enrollment fraud and falsely certify each year that they are in compliance with binding restrictions on student eligibility, enrollment and recordkeeping while intentionally and knowingly violating those requirements.  Marion alleges that these false representations, coupled with claims for payment of Title IV funds, constitute false claims under 31 U.S.C. § 3729(a)(1) and (a)(2).  (First Amended Complaint ["FAC"], ¶¶ 25-28.)

The thrust of Marion's complaint is enrollment fraud.  While Marion was employed as Senior Registrar of Heald College, she discovered original source student records actually contradicted entries maintained in the electronic database the school used to claim Title IV money.  (FAC , ¶ 44.)  Individuals entered into the database and reported as enrolled "students" eligible for Title IV funds never consented to enrollment or financial aid money claimed by Heald College.  (FAC, ¶ 43.)  Individuals entered into the database and reported as having the requisite high school diploma or its equivalent had no such credentials.  (FAC, ¶¶ 41-43 and 75.)  Individuals who never attended a class or who had missed 70 consecutive days of class were reported as successful students for whom Heald should continue receipt of financial aid funds.  (FAC, ¶¶ 56-57 and Ex. 2.)  The defendants named in Marion's  complaint created, maintained and reported a roster of ghost students to the United States Department of Education in order to claim hundreds of millions of dollars in Title IV funds.  (FAC, ¶¶ 99-121.)

The defendants take issue with the truth of Marion's claims.  They do so by asking the Court to disregard the allegations of her complaint and *believe* the purely electronic database defendants used to report student enrollment, matriculation and eligibility to the government in exchange for financial aid money was true, despite the absence of real students who actually qualified for financial aid.  As Marion alleges in her complaint, defendants conducted a fraudulent scheme of maintaining false student profiles in the electronic database they used to submit claims for Title IV funds.  When

1  Marion complained of the fraud, defendants could have stopped it and self-reported.  Instead,

2  defendants directed those implicated in the fraud to cover it up and get rid of Marion.  Judgment to

3  this effect was entered by the Monterey County Superior Court against Heald College and Corinthian

4  Colleges, Inc. on February 28, 2014.  (Marion Request for Judicial Notice ["RJN"], Ex. 1 at pp. 1

5  and 10-18.)

6  Since entry of that judgment, these educational institutions have continued to engage in deceit

7  and a destruction of evidence.  (See Marion RJN Ex. 10 at p.  22:5-11[April 4, 2014 Order Awarding

8  Sanctions against Corinthian Colleges, Inc.][1] and Ex.  11 [November  5, 2014 Heald email

9  confirming Karen Rose directions to destroy original source documents].)

10  Where Marion alleges a valid claim for enrollment fraud through the falsification of high

11  school diplomas or their equivalent, defendants advise this Court the practice is of no consequence.

12  Defendants argue Title IV provides a limited exception allowing someone who lacks this credential

13  access to the federal financial aid program. (Motion to Dismiss ["MTD"] at p. 12:6-9.)  The problem

14  is that it is not available to Heald.  As alleged on page 9, lines 25-28 of Marion's complaint and

15  verified on page 86 of the Heald Academic Catalog identified as Exhibit 8 to defendant's Request

16  for Judicial Notice, Heald represents its enrollment is limited to individuals with a high school

17  diploma or its equivalent.  Defendants' argument highlights their fraud.

18  ## II.  THE SCHEME.

19  Pursuant to 20 U.S.C. section 1094(a), defendant institutions Heald College and Corinthian

20  Colleges, Inc. are bound to a Program Participation Agreement ("PPA") with the United States

21  Secretary of Education.  It mandates these institutions "establish and *maintain* such administrative

22  and fiscal procedures and *records* as may be necessary to ensure *proper* and efficient administration

23  of funds."  (Emphasis added.)  (FAC, ¶ 30.)

24  Student data entries within an electronic database like the Campus Vue or PeopleSoft

25

26  [1]"In sum, the court finds, by clear and convincing evidence, that Corinthian's and Corinthian's counsel's lackluster search for documents, failure to implement a litigation hold, deletion of evidence, refusal to cooperate with Plaintiffs in the discovery process (particularly as evidenced by its withholding of information regarding both the backup tapes and its interpretation of the parties' Stipulated Order), reliance on a recklessly false declaration, shifting litigation positions, and inaccurate representations to the court constitute bad faith or conduct tantamount to bad faith."

27

28

1 software programs used by the defendant institutions to make claims for Title IV funds are nothing

2 more than clerical entries designed to create a student profile. (FAC, ¶¶ 34-46.) It is not reality. A

3 real person who meets the financial aid eligibility requirements with verified proof of such is

4 necessary to ensure the truth of the data defendants report in exchange for Title IV money.

5      Defendants argue such record keeping is not necessary because: "The HEA does not

6 condition Title IV funds on an institution obtaining or keeping any such documentation." (MTD at

7 p. 14:22-23.) The language of the HEA may not, but the PPA does. Compliance with the PPA is

8 a condition to receipt of any Title IV money. 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14. (See FAC,

9 ¶ 30.)

10      As Heald College admitted through its Salinas, California campus President Maria Embry,

11 the records maintained do not reflect reality. (Marion RJN, Ex 5 [Embry at pp. 324-325].) In

12 violation of the PPA, defendants fabricate and alter original source records which otherwise expose

13 falsities in the electronic accounts Heald College and Corinthian Colleges, Inc. use to obtain Title

14 IV funds from the government. (See Marion RJN, Ex. 2 [Rose email to Cope].) When Marion's

15 September 7, 2011 complaints of enrollment fraud reached Heald Vice President Leah Cope and

16 Heald President Eeva Deshon, they notified Embry so that she and her trusted assistants could alter

17 original source records to conform with the false data the corporate office was using to obtain Title

18 IV funds. (FAC, ¶¶ 44-45.) While Cope promised Marion a personal investigation into the ghost

19 students raised by Marion, Vice President Cope had no intention of doing so. (Marion RJN, Ex. 3,

20 p. 2; Ex. 4 [Cope Testimony at p. 584]; Ex. 5 [Embry at pp. 326, 330:3-5].) Unknown to Marion,

21 Cope knew Heald had a history Title IV violations. Years earlier, Cope had been charged with

22 monitoring the Salinas campus where she knew violations occurred and now she made a point of

23 advising the wrongdoers. (Marion RJN, Ex. 4 [Cope at pp. 591-592]; Ex. 5 [Embry at pp. 326, 413,

24 415-416].)

25      **III.  THE REQUIREMENT OF RULE 9b IS MET BY MARION.**

26      "In alleging fraud or mistake, a party must state with particularity the circumstances

27 constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

28 may be alleged generally." Fed. R. Civ. P. 9(b). The purpose of this rule is to provide enough detail

1   to give defendants notice of the particular misconduct so that they can defend against the charge and

2   not just deny that they have done anything wrong.  *Ebeid v. Lungwitz*, 616 F3d 993, 999 (9th Cir.

3   2010).  The rule may be relaxed in a corporate fraud case where the evidence is within a defendant's

4   exclusive possession.  *Ibid.*

5           Here, the Rule 9b test is met and defendants have ample notice.  On September 6 and 7,

6   2011, Marion reported the fraud she discovered while working as the Senior Registrar at Heald's

7   Salinas campus to the defendants.  She detailed it in telephone calls and emails where it was received

8   by the defendant institutions as well as Heald College Central Administrative Office ("CAO")

9   Division Director of Registrars, Karen Rose, Vice President Leah Cope, Vice President Terry Rawls,

10   Vice President Barbara Gordon and President Eeva Deshon.  (FAC,  ¶¶ 44-45, 59 and 108.)  Each

11   of the named defendants received notice of the particular misconduct that Marion had discovered

12   as evidenced by defendants' discussions and reactions.  (FAC, ¶ 45.)  By email dated September 7,

13   2011, defendant Rose confirmed receipt of the charge and internal discussions she had with

14   defendant Rawls and Leah Cope about its details.  (See Marion RJN, Ex. 2.)  Cope made sure

15   defendant Deshon knew and was kept informed throughout.  Deshon made sure the Heald Board of

16   Trustees knew and was kept informed throughout.  (Marion RJN, Ex. 6 [Deshon at pp.  436-438].)

17   By Memorandum dated September 8, 2011, defendants assured Marion of an investigation without

18   ever indicating they needed to know more before responding to the charge.  (Marion RJN, Ex. 2 and

19   Ex. 3.)

20           The who, what, when, where, and how is known by the defendants.  Upon learning that

21   Marion had discovered their Title IV fraud, they decided to take all the student files whose contents

22   Marion had discovered did not support the electronic data entries defendants were making for receipt

23   of their Title IV funding.  (FAC , ¶ 45.)  On September 7, 2011, Vice President Cope notified Salinas

24   President Maria Embry, whom she knew had been implicated by Marion, so Embry could gather the

25   files the same day.  (FAC, ¶ 44.)  Embry, who was charged with the fabrication of student files and

26   reporting of false data from the Salinas campus, undertook a shredding and refabrication of student

27   files so that the original source records Marion had discovered within these files would now match

28   the electronic data defendants reported to the government for their funding.  (FAC, ¶¶ 44-45, 59.)

1   Embry knew the electronic data the schools stored in their Campus Vue and People Soft databases

2   was not true and that it was contradicted by the original source records generated at the campus level.

3   (See Marion RJN, Ex. 5 [Embry at pp. 324-326] and Ex. 7 [ghost student].)

4       Vice Presidents Cope, Rawls, Gordon, and President Deshon necessarily knew Title IV

5   required a correction of the electronic database used for receipt of Title IV revenue, not an alteration

6   of the original source records at the campus level.  (See Marion RJN, Ex 5 [Embry at pp. 364-365].)

7   Title IV violations discovered at this campus in the past had required self-reporting.  (FAC, ¶ 59;

8   Marion RJN, Ex. 4 [Cope at p. 591].)  Rather than correct false data in the electronic database, self-

9   report or otherwise allow any disclosure to the government, these defendants directed a coverup with

10  a destruction of evidence and a termination of Marion.  (FAC, ¶ 45.)

11      The above is confirmed by defendants' own emails, sworn testimony and adjudicative

12  findings. (See Marion RJN.) In August 2013, defendants and their counsel interrogated Marion over

13  the course of a 12-hour deposition.  Following a three-day arbitration in September 2013 in which

14  Deshon, Embry and Cope participated, the defendant institutions Heald College and Corinthian

15  Colleges were found to have been on adequate notice of the fraud and found liable for responding

16  to it with a destruction of evidence and unlawful termination of Marion.  (See Marion RJN, Ex. 1,

17  Judgment at pp. 11-14, 18.)

18      Defendants maintain a fraudulent course of conduct. As reflected within the Judgment and

19  Cope testimony, the defendants engage in deceit and spoliation.  As reflected on page 22 of an

20  April 4, 2014 Order Awarding Sanctions, Corinthian Colleges continues to engage in such deceit.

21  (Marion RJN, Ex. 10.)  As reflected in a November 5, 2014 email to all instructors, Heald College,

22  Corinthian Colleges and Karen Rose are still directing a destruction of original source records.

23  (Marion RJN, Ex. 11.)

24      The accompanying Request for Judicial Notice submitted by Marion provides additional

25  support for her complaint and the propriety of its prosecution.  Under *Rule 201*, the Court can take

26  judicial notice of such records.  Moreover, the incorporation by reference doctrine "permits a district

27  court to consider documents 'whose contents are alleged in a complaint and whose authenticity no

28  party questions, but which are not physically attached to the [plaintiff's] pleadings.'"  *In re Silicon*

1  *Graphics Inc. Securities Litigation,* 183 F.3d 970, 986 (9th Cir. 1999).  In this regard, Marion

2  provides admissions of the defendants themselves.

3      Defendants' claim that they cannot possibly respond to the complaint because they do not

4  know enough is unfounded.  Should the court disagree, plaintiff requests leave to amend.  If the

5  Court needs Marion to identify students by name and other particulars not usually provided in public

6  filings like a complaint, she can do so.  (See Marion RJN, Ex. 7.)  Currently, Marion has provided

7  a sampling with reference to students by initials or student number. If the Court needs Marion to

8  quote defendants' admissions within the body of her complaint or to attach defendants' emails as

9  exhibits, she can do so.  Notice is the objective of pleading under the Rules of Civil Procedure but

10  if evidentiary detail is to be required, Marion is prepared to provide it.  *Ibid.*

11              **IV.  MARION STATES A CLAIM FOR RELIEF.**

12      The False Claims Act ("FCA"), 31 U.S.C. §§ 3729, et seq., provides for "the recovery of civil

13  penalties from those who knowingly present a false or fraudulent claim to the federal government

14  for payment, or knowingly use a false record to avoid or decrease an obligation to pay the federal

15  government." *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1467 n. 1 (9th Cir.), cert.

16  denied, 519 U.S. 865, 117 S. Ct. 175, 136 L. Ed.2d 116 (1996).

17      The False Claims Act makes liable anyone who "knowingly presents, or causes to be

18  presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or

19  "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false

20  or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B).  A person is also liable who "knowingly makes,

21  uses, or causes to be made or used, a false record or statement material to an obligation to pay or

22  transmit money or property to the Government, or knowingly conceals or knowingly and improperly

23  avoids or decreases an obligation to pay or transmit money or property to the Government." 31

24  U.S.C. § 3729(a)(1)(G).  A person acts "knowingly" if that person "(i) has actual knowledge of the

25  information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in

26  reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b)(1)(A).  The term

27  "knowingly" requires "no proof of specific intent to defraud."  31 U.S.C. § 3729(b)(1)(B).

28      The "archetypal *qui tam* False Claims Action" is one in which "a private company

1  overcharges under a government contract, [and] the claim for payment itself is literally false or

2  fraudulent." *Hendow v. University of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006). "The False

3  Claims Act, however, is not limited to such facially false or fraudulent claims for payment." *Id.*

4  "Rather, the False Claims Act is intended to reach all types of fraud, without qualification, that might

5  result in financial loss to the Government." *Id.*

6        Here, Marion has alleged that defendants overcharge the government by submitting false

7  claims that the students for whom defendants seek Title IV funds are in fact real students, eligible

8  for financial aid and actively enrolled in school. Marion has alleged who is doing it and provided

9  specific names. (FAC, ¶¶ 34-45.) Marion has alleged what they are doing [fabricating proof of

10  eligibility for admission and reporting ghost students] and how it inflates the defendants' claim for

11  payment from the government and how it avoids defendants' mandated refund of money to the

12  government. (FAC, ¶¶ 34-46, 51-60, 67-70.) Marion has alleged specific examples. (*Ibid.*) Marion

13  offers more with her Request for Judicial Notice.

14        In addition to the "archetypal" claim, the Ninth Circuit recognizes "false certification" claims:

15  "where a party merely falsely certifies compliance with a statute or regulation as a condition to the

16  government payment." *Hendow*, *supra,* 461 F.3d at 1171. In *Hendow*, the Ninth Circuit recognized

17  a cognizable FCA claim based on the false certification theory. *Hendow*, 461 F.3d at 1174-78. The

18  court reversed a dismissal where there were sufficient allegations that the University of Phoenix

19  knowingly made promises to comply with all terms of a Program Participation Agreement, including

20  an incentive compensation ban, in order to become eligible for Title IV funds.

21        "A civil action for False Claims Act liability requires four essential elements: '(1) a false

22  statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4)

23  the government to pay out money or forfeit moneys due.'" *United States ex rel. Ruhe v. Masimo*

24  *Corp.*, 977 F.Supp.2d 981, 991 (C.D. Cal. 2013) (citing *United States ex rel. Hendow v. University*

25  *of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)); see also *Ebeid ex rel. United States v. Lungwitz*,

26  616 F.3d 993, 997 (9th Cir. 2010) (same). The complaint by Marion satisfies each of the elements.

27  **Falsity:**

28        Marion alleges a false statement or course of conduct. She alleges that defendants violate

1   a statutory requirement, recordkeeping, to which they agreed to be bound by statute, regulation and

2   Program Participation Agreement. (FAC, ¶ 30.) She alleges that defendant establishes policies of

3   violating that requirement and encourages employees to violate that requirement. (FAC, ¶¶ 44-46,

4   59, 63.) She alleges defendants retaliate and inflict injury if employees do not violate that

5   requirement or alternatively if they challenge it. (FAC, ¶ 81.) The allegations are specific and they

6   are supported by a judgment. (Marion RJN, Ex. 1.) As such, they are hardly implausible as

7   defendants claim. Marion also provides specific instances of violations including ghost students who

8   were the subjects of defendants' records falsification. She alleges that defendants did so knowingly

9   and even provides a documented trail of one such victim. (Marion RJN, Ex. 7.)

10       When Marion brought these violations to defendants' attention, they did not investigate to

11   ascertain or confirm the truth. Instead, they feigned an investigation for the purpose of concealment.

12   To the detriment of the government, defendants tipped off each other and then fabricated accounts

13   to conceal the ongoing violations. See *United States ex rel. Hagood v. Sonoma County Water*

14   *Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (deliberate ignorance or reckless disregard each meet

15   statutory definition of "knowingly").

16   **Scienter:**

17       Marion alleges a false statement or course of conduct made knowingly and intentionally. She

18   alleges knowledge on the part of each defendant. (FAC, ¶¶ 44-45, 59 and 108.) She provides

19   evidence of defendants' knowledge in the form of her own complaints. She provides admissions

20   from defendants themselves. She provides a judgment with findings that defendants responded to

21   complaints about Title IV violations with retaliation, concealment and spoliation. (See Marion

22   RJN.)

23   **Materiality:**

24       The substance of Marion's claims is material. The eligibility of Heald College and Corinthian

25   Colleges under Title IV is explicitly conditioned on the maintenance of true, verifiable records

26   ensuring the proper administration of funds received from the Secretary of Education. First, a federal

27   statute states that in order to be eligible, an institution must:

28       enter into a program participation agreement with the Secretary [of Education]. The
         agreement *shall condition* the initial and continuing eligibility of an institution to

1
2

participate in a program *upon compliance* with the following requirements . . . [including maintenance of records necessary to ensure proper administration of funds received from the Secretary.]

3

20 U.S.C. § 1094(a) (emphasis added).  Second, a federal regulation specifies:

4
5
6
7

An institution may participate in any Title IV, HEA program . . . *only if* the institution enters into a written program participation agreement with the Secretary. . . .  A program participation agreement *conditions* the initial and continued participation of an eligible institution in any Title IV, HEA program *upon compliance* with the provisions of this part [such as the maintenance of administrative and fiscal procedures and records as necessary to ensure proper administration of funds received from the Secretary.]

8

34 C.F.R. § 668.14(a)(1) and (b)(4) (emphasis added).

9

The defendant institutions' compliance is an ongoing obligation.  While reversing dismissal

10

of a similar complaint, the Ninth Circuit in *Hendow v.  University of Phoenix*, 461 F.3d 1166, 1176-

11

1177 (9th Cir.  2006) explained:

12
13
14
15
16
17
18

[T]he DOE and the United States Congress, as evidenced by the statutes, regulations, and contracts implementing the Title IV and Higher Education Act requirements for funding, quite plainly care about an institution's ongoing conduct, not only its past compliance.  For purposes of federal funding, the University is not permitted to merely have a history of compliance with the applicable regulations; it must also agree to comply in the future.  The Program Participation Agreement, constraining its ongoing conduct, is the condition of payment that the federal government requires--a promise that the University shall not break the law, not merely an assertion that it has not broken the law *yet*.  If such promises were not conditions of payment, the University would be virtually unfettered in its ability to receive funds from the government while flouting the law.  This cannot be what Congress and the DOE intend when they ask institutions to sign Program Participation Agreements.

19
20
21
22
23

The statute, regulation and agreement all condition participation and payment on compliance with, among other things, the precise requirement that Marion alleges defendants knowingly violated or disregarded.  (FAC, ¶ 81.)  The verifiable recordkeeping that defendants despise and castaway with their motion as unnecessary is in fact crucial.  (Marion MTD at p. 14:22-23; see also Marion RJN, Ex. 10 at p. 22 and Ex. 11.)

**Claim:**

24
25
26
27
28

Marion alleges that Heald College submits false claims to Department of Education and receives funds in response.  (FAC, ¶¶ 83, 88, 93, 99-102, 105-109, 112-114 and 117-120.) Allegations as to how the federal bureaucracy processes that payment are unnecessary.  *Hendow, supra,* 461 F.3d 1177.  All that matters is whether the false statement or course of conduct causes the government to "pay out money or to forfeit moneys due."  *Id.*  Marion has properly alleged that

1    Heald College and Corinthian Colleges submitted a claim, for purposes of False Claims Act liability.

2         To show that claims were false under a false certification theory, a complaint "must plead

3    with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly

4    undertook to comply with a law, rule or regulations that is implicated in submitting a claim for

5    payment and that (2) claims were submitted (3) even though the defendant was not in compliance

6    with that law, rule or regulation." *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010.)

7         Marion's complaint meets this test.  Defendants' argument that this Court should simply

8    accept that the electronic database defendants used to claim Title IV funds from the government was

9    true and disregard Heald's violation of the statutory recordkeeping requirements is insufficient to

10   support dismissal.

11        **V.  MARION STATES A VALID CLAIM FOR ENROLLMENT FRAUD.**

12        Defendants take issue with Marion's claim for enrollment fraud by arguing: "the HEA

13   *expressly allows* schools to admit students who lack a high school diploma or its equivalent, if those

14   students '[a]re beyond the age of compulsory school attendance in the State in which the institution

15   is physically located.'  34 C.F.R. § 600.5(a)(3)(iii)."  (MTD at p. 12:6-9.)  The problem with this

16   argument is that Heald touts itself as a college who limits all student enrollment to those with a high

17   school diploma or its equivalent.  As alleged in the complaint and verified in the catalog to which

18   the defendants seek judicial notice:

19        **ENROLLMENT**

20        Admission to Heald College requires that applicants do the following:

21        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

22        Provide proof of graduation from a high school that is recognized by the
     state/province or proof of successfully completing high school equivalency as
23   recognized by the state/province (the General Education Development Exam, a state-
     recognized high school proficiency exam, or international coursework deemed
24   equivalent by the college).  Original diplomas, sealed official transcripts, or
     documents sent directly from the institution via fax machine that include a date of
25   graduation are acceptable forms of proof.  Students who graduated from a California
     public high school during or after the 2005-2006 school year will also be required to
26   have passed the California High School Exit Exam (CAHSEE).  If proof of high
     school graduation or its equivalent is not provided within the specified timeframe,
27   applicants will not be allowed to attend college at Heald.

28   (Defendants' RJN, Ex.  8 at p. 86; FAC at p. 9:25-28.)  As Heald represents all of its students have

1  a high school diploma or its equivalent as defined above,  it would be a fraud for Heald to disregard

2  this requirement in either its enrollment or its submissions for receipt of Title IV funds.

3  **VI.  DEFENDANTS' FIRST-TO-FILE ARGUMENT FAILS.**

4      The first-to-file rule of 31 U.S.C. section 3730(b)(5) bars only subsequent complaints which

5  have been filed after a complaint which fulfills the jurisdictional prerequisites of 31 U.S.C.

6  section 3730(e)(4) and which is legally sufficient under Rule 9(b) of the Federal Rules of Civil

7  Procedure.  Without defendants demonstrating, or conceding, that cases filed ahead of Marion's

8  complaint are legally sufficient and within the jurisdiction of this Court, their first-to-file argument

9  simply fails.

10      In *Campbell  ex rel.  United States v.  Redding Medical Center*, 421 F.3d 817, 822-825 (9th

11  Cir. 2005), the appellate court held that section 3730(b)(5) does not create an absolute first-to-file

12  bar when the first complaint is jurisdictionally defective.  There, the district court committed

13  reversible error when it dismissed a second-filed complaint without determining whether the first-

14  filed complaint satisfied the jurisdictional prerequisites.

15      In *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005), the appellate court

16  held that "[o]nly a complaint that complies with Rule 9(b) can have preemptive effect under

17  §3730(b)(5)."  There, a second-filed case was not barred by a prior complaint containing "broad and

18  conclusory allegations" that were legally insufficient under Rule 9(b).  *Id*. at 972.

19      If defendants are willing to concede that the *Christy Hays* and *Mamie Andrews* cases

20  discussed on pages 4 and 5 of their Motion to Dismiss meet these two tests, then discussion can

21  proceed to whether those two cases allege the same material elements of fraud as that alleged in the

22  Marion case.  Otherwise, the defendants have simply failed to carry their burden on the motion to

23  dismiss.

24      Marion has a valid claim for enrollment fraud based on the fabrication of student eligibility

25  for admission at the outset and associated Title IV funding.  Marion's case is distinguishable from

26  the other *qui tam* cases in this regard.  While Marion shares some similarities with the attendance

27  fraud relators Christy Hays and Mamie Andrews rely upon for their student retention fraud, the cases

28  do not share the same material elements of fraud.  Marion is the only relator with a case of

1   enrollment fraud.  She is also the original source for claims against the Heald College, an entity

2   based in California with its own board of trustees.

### VII.  A RULING ON THE FIRST-TO-FILE BAR SHOULD AWAIT
### A DETERMINATION ON THE MOTION TO CONSOLIDATE
### MULTIPLE *QUI TAM* CASES.

5   Defendants argue that Marion's participation in a recently filed motion before the Judicial

6   Panel for Multidistrict Litigation represents a concession that her case shares a "core theory of

7   liability" with three other pending *qui tam* actions.  (Motion to Dismiss at p. 4:6-8.)  The core theory

8   of liability is Title IV fraud in violation of the False Claims Act.  This acknowledgment in a motion

9   for centralization of multiple actions under 28 U.S.C. section 1407(a) is not outcome determinative.

10   In the words of the defendants: "the basic elements of any FCA claim are the same: '(1) a false

11   statement or fraudulent course of conduct; (2) made with scienter; (3) that was material, causing;

12   (4) the government to pay out money or forfeit moneys due.'"  (Motion to Dismiss at p. 6:20-23.)

13   Centralization of multiple *qui tam* actions under 28 U.S.C. § 1407(a) concerns itself with

14   pretrial efficiency. The language of the statute does not impose any qualitative or quantitative

15   standard or test.  It does not require a predominance of common questions or strict identity of issues.

16   It concerns itself not with a determination of factual similarity between successive *qui tam* lawsuits

17   but with ensuring "proceedings will be for the convenience of parties and witnesses and will promote

18   the just and efficient conduct of such actions."  28 U.S.C. §1407(a).

19   This statute recognizes that the cases involve a common question of fact but also uncommon

20   questions of fact.  Its purpose is to place multiple actions:

21       before one judge who can formulate a pretrial program that: i) allows discovery with
         respect to any non-common issues to proceed concurrently with remaining discovery
22       on common issues, *In re Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L.
         1976); and ii) ensures pretrial proceedings will be conducted in a manner leading to
23       the just and expeditious resolution of all actions to the overall benefit of the parties.

24   *In re Cardiac Devices Qui Tam Litigation*, 254 F.Supp.2d 1370, 1372 (J.P.M.L. 2003).

25   A proper application of the first-to-file bar requires defendants to demonstrate or concede the

26   legal sufficiency of complaints filed ahead of Marion.  Due process requires that the other relators

27   be afforded the opportunity to be heard in this regard.  For that reason, any application of the first-to-

28   file bar should await a determination on the motion to consolidate cases.  If that motion is granted,

1  then the judge assigned to hear the consolidated cases can make a determination after appropriate

2  notice to all interested parties.  See *In re Kaplan Higher Education Corp. Qui Tam Litigation*, 626

3  F.Supp.2d 1329 (J.P.M.L. 2009) (transferee judge to determine whether any *qui tam* claim or action

4  should continue.)

5  ### VIII.  CONCLUSION.

6        For the foregoing reasons, the Court should deny defendants' motion to dismiss.

7  Carolina Marion has pled a valid claim for fraud under the False Claims Act.  She has alleged the

8  requisite elements with particularity and demonstrated that defendants are well aware of the

9  misconduct at issue to warrant an Answer on their behalf.

10 DATED:  April 3, 2015.                    LAW OFFICES OF MARK A. O'CONNOR

11

12                   By     /s/ Mark A. O'Connor

13                     Mark A. O'Connor, Esq.
                    Attorneys for Plaintiff and Relator
                    CAROLINA MARION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28