UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CAROLINA MARION,<br><br>Plaintiff,<br><br>v.<br><br>HEALD COLLEGE, LLC, et. al.,<br><br>Defendants. | Case No. 5:12-cv-02067-PSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**(Re: Docket No. 55)** |

Defendant Corinthian Colleges, Inc.'s legal troubles had only just begun when the United States Department of Education announced its investigation into Corinthian's business in 2014. Since then, Corinthian and its subsidiaries have faced a wave of litigation from its students, former employees and the government. Joining that wave, Plaintiff Carolina Marion brought this suit against Defendants Heald College, LLC, Corinthian and four Heald administrators—Eeva Deshon, Barbara Gordon, Terry Rawls and Karen Rose (the "Individual Defendants").[1] Claiming Marion's complaint rehashes allegations it already faces in other suits and otherwise fails to state plausible claims, the Individual Defendants move to dismiss. Because Marion's fraud allegations are not materially different from those in the earlier suits, and her conspiracy allegations fail to state a claim, the motion to dismiss is GRANTED, but with leave to amend.

---

[1] *See* Docket No. 53 at ¶¶ 11-16.

1

Case No. 5:12-cv-02067-PSG
ORDER GRANTING MOTION TO DISMISS

## I.

The False Claims Ac authorizes individuals to bring suit on behalf of the United States against parties submitting false claims to the government.[2]  Such "qui tam" provisions incentivize whistleblowing by rewarding qui tam plaintiffs with a share of the government's recovery.[3]  But they may also encourage repetitive litigation if litigants can allege substantially similar fraud after the first complaint is filed.  To foreclose this possibility, Congress imposed a jurisdictional limit on the court's ability to hear FCA qui tam actions in 31 U.S.C. § 3730(b)(5).[4]  Commonly referred to as the "first-to-file rule," Section 3730(b)(5) provides "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."

The Ninth Circuit adopted a material facts test to determine whether Section 3730(b)(5) bars subsequent litigation.  Under this test, a "related action based on the facts underlying the pending action" is a "later-filed action[] alleging the same material elements of fraud described in an earlier suit."[5]  In adopting this test, the Ninth Circuit emphasized that "piggyback claims" alleging similar fraudulent conduct to previously-filed claims confer no benefit on the government.[6]  The court observed "once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds."[7]  Accordingly, slight alterations in

---

[2] *See* 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.  The action shall be brought in the name of the Government.").

[3] *See* 31 U.S.C. § 3730(d).

[4] *See United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, Case Nos. 12-cv-55396, 12-cv-56117, 2015 WL 4080739, at *7 (9th Cir. July 7, 2015) ("We treat the [Section 3730(b)(5)] bar as jurisdictional."); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) ("The first-filed claim provides the government notice of the essential facts of an alleged fraud, while [Section 3730(b)(5)] stops repetitive claims.").

[5] *Lujan*, 243 F.3d at 1189.

[6] *See id.*

[7] *Id.* (citing *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)).

the type of wrongdoing alleged do not necessarily constitute new material facts.[8] Determination of what constitutes a new material fact requires consideration of whether the newly alleged facts provide an additional benefit to the government in its investigation of the fraud.[9]

In early 2012, Marion worked for Heald as a registrar in Salinas, California.[10] Heald is a for-profit higher education institution owned by Corinthian.[11] While working at Heald, Marion discovered what she alleges to be evidence of widespread fraud to claim federal funds.[12] The alleged schemes include falsifying student attendance records to avoid returning the students' federal financial aid, fabricating high school diplomas, disregarding school eligibility requirements, improperly incentivizing Heald's recruitment personnel and falsifying student grades.[13] Defendants also allegedly enrolled "phantom students" who never attended Heald, taking out students loans on those individuals' behalves without their knowledge or consent.[14]

Several earlier suits brought against Corinthian allege similar fraudulent schemes. In one case, Stephen Backhus alleged Corinthian admitted students who failed to satisfy the school's eligibility requirements and improperly incentivized student recruitment.[15] In a separate case that

---

[8] In *Lujan*, the Ninth Circuit affirmed the district court's holding that two complaints alleged the same material facts. *Id.* at 1189-90. The district court had ruled that despite Lujan's attempt to distinguish mischarging fraud within one aircraft manufacturing program from mischarging fraud that shifted costs among multiple aircraft manufacturing programs, "to give credence to Lujan's microscopically fine distinctions between her allegations and those of [the prior claimant] would do injustice to the purpose underlying the False Claims Act." *Id.* at 1185. *See also Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 (10th Cir. 2004) (holding that a prior FCA action alleging the defendant mismeasured natural gas extraction to avoid paying royalties to the United States barred a subsequent action that alleged several specific methods of mismeasurement unmentioned by the prior complaint).

[9] *See Hartpence*, 2015 WL 4080739, at *9 (considering whether newly alleged facts benefit the government's investigation of fraud when determining whether the newly alleged facts are material); *see also United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009) (same).

[10] *See* Docket No. 53 at ¶ 8.

[11] *See id.* at ¶ 3.

[12] *See id.* at ¶ 4.

[13] *See id.* at ¶¶ 32, 36-40, 48-50, 52, 62.

[14] *See id.* at ¶¶ 42-43.

[15] *See* Docket No. 57-2, Exh. 4 at ¶¶ 21, 41-42.

3
Case No. 5:12-cv-02067-PSG
ORDER GRANTING MOTION TO DISMISS

remains pending, Christi Hays alleges Corinthian falsified student attendance records and continued collecting federal funds for students who had withdrawn.[16] In another pending case, Mamie Andrews alleges similar fraud, adding that Corinthian lied to potential students about job placement outcomes and school facilities.[17]

In her amended complaint, Marion asserts several causes of action against the Individual Defendants, all under the FCA.[18] Her claims fall into two categories. First, Marion asserts each Defendant defrauded the United States by knowingly presenting or causing to be presented false claims or statements.[19] Second, Marion alleges the Individual Defendants conspired to commit these FCA violations.[20] In May 2015, Heald and Corinthian filed for bankruptcy, resulting in a mandatory stay on any litigation against the Corporate Defendants.[21] The Individual Defendants, however, have moved forward with this motion to dismiss any claims against them.[22]

## II.

The parties consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

At this stage of the case, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[23] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and

---

[16] *See* Docket No. 57-1, Exh. 2 at ¶¶ 32, 40-44.

[17] *See* Docket No. 57-1, Exh. 3 at ¶¶ 36-37, 54-55, 66.

[18] *See* 31 U.S.C. §§ 3729-3733.

[19] *See* Docket No. 53 at ¶¶ 102, 109, 114, 120; *see also* 31 U.S.C. § 3729(a)(1)(A)-(B), (G).

[20] *See* Docket No. 53 at ¶¶ 122-124; *see also* 31 U.S.C. § 3729(a)(1)(C).

[21] *See* Docket No. 70.

[22] *See* Docket No. 72.

[23] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

matters of which the court may take judicial notice.[24]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[25]

### III.

Under Fed. R. Civ. P. 12(b)(1), a case must be dismissed when, considered in its entirety and on its face, the complaint fails to establish subject matter jurisdiction.[26]  The plaintiff bears the burden of establishing subject matter jurisdiction.[27]  Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[28]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[29]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30]  Because Marion's fraud claims run afoul of the first-to-file rule, this court has no jurisdiction to hear them.  Because Marion's conspiracy claims run afoul of the particularity requirement they must meet, those claims also must be dismissed.

*First,* Marion's fraud claims do not allege any new material facts. Her complaint alleges that Defendants employed a variety of fraudulent schemes including not withdrawing students who failed to meet the school's attendance requirements, improperly incentivizing recruitment efforts and falsifying student grades.[31]  Each of these patterns of conduct, however, has been alleged in

---

[24] *See id.*

[25] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[26] *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

[27] *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013).

[28] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[29] *Twombly*, 550 U.S. at 570.

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[31] *See* Docket No. 53 at ¶¶ 47-64.

1    prior complaints.[32] Marion emphasizes her "enrollment fraud" allegations as the distinguishing

2    feature of her complaint.[33] Specifically, she alleges Defendants enrolled "phantom students" into

3    Heald's system without their consent or without confirming the students met the school's eligibility

4    requirements.[34] But even these enrollment fraud allegations appear in earlier complaints. The

5    Hays, Backhus and Andrews complaints specifically allege Corinthian collected federal aid for

6    "improperly enrolled students,"[35] collected funds for "fraudulently 'enrolled' students"[36] and

7    continued drawing funds for students who had withdrawn from the school.[37] While Marion's

8    complaint is more detailed, these prior complaints allege the same material elements of fraud:

9    claiming federal funds for students improperly placed or kept on Corinthian's student roster.

10   Marion concedes that prior complaints put the government on notice of Defendants' alleged

11   attendance fraud.[38] The problem for Marion is that the type of enrollment fraud she alleges is

12   sufficiently related to attendance fraud that a government investigation into the latter would

13   inevitably uncover the former. To investigate attendance fraud, the government would almost

14   certainly look for discrepancies between Heald's electronic attendance records and classroom

15   attendance records kept by professors. If, as Marion alleges, Defendants created student profiles

16   for students who never attended the school, those students necessarily would not have attended

17   classes. The government's investigation into discrepancies between actual and electronic

18   attendance records therefore would identify any student fraudulently enrolled in the manner Marion

19   alleges. Her allegations therefore contribute little—if anything—to the government's investigation.

20   Marion's complaint is not saved by her allegations against new Defendants not specified in

---

[32] *See, e.g.*, Docket No. 57-1, Exh. 2 at ¶ 32; Docket No. 57-1, Exh. 3 at ¶¶ 54, 91; Docket No. 57-2, Exh. 4 at ¶¶ 22, 31.

[33] *See* Docket No. 64 at 11-12 (distinguishing Marion's complaint from previously-filed complaints solely on the basis of alleged enrollment fraud).

[34] *See* Docket No. 53 at ¶¶ 34, 42.

[35] Docket No. 57-1, Exh. 3 at ¶ 91.

[36] Docket No. 57-2, Exh. 4 at ¶ 21.

[37] Docket No. 57-1, Exh. 2 at ¶ 32.

[38] *See* Docket No. 64 at 11 (describing previous complaints as allegations of attendance fraud).

6
Case No. 5:12-cv-02067-PSG
ORDER GRANTING MOTION TO DISMISS

earlier complaints. A subsequent claim does not allege new material facts by claiming the same defendant engaged in the same type of wrongdoing at a different place or time.[39] While the Ninth Circuit has not addressed whether this rule also bars claims against a corporation's employees if the corporation was previously accused of the same fraud, the D.C. Circuit addressed this issue in *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.* The Court held that allegations against previously unmentioned employees are not new material elements of fraud when earlier complaints alleged company-wide fraud.[40] As the court explained, "given [the earlier plaintiff's] broad allegations based on his position as an HCA insider, [plaintiff's] naming . . . a specific HCA subsidiary . . . and naming individual employees . . . were merely variations on the fraud [the earlier] complaint described." While not binding, the court finds this reasoning persuasive. Allowing plaintiffs to escape the first-to-file bar by naming specific employees who carried out a previously-alleged corporate fraud contravenes the purpose of Section 3730(b)(5)—to prevent piggyback claims.[41] Here, the previously-filed complaints against Corinthian allege that fraudulent conduct extended far beyond individual campuses and pervaded the entire company.[42]

Marion also is incorrect in suggesting that the court must consider whether the earlier-filed complaints would survive motions to dismiss under Fed. R. Civ. P. 9(b). A plaintiff always bears the burden of establishing the court's subject matter jurisdiction.[43] Even if Section 3730(b)(5) only operates when previously-filed complaints satisfy Rule 9(b)'s requirements, Marion would need to present evidence challenging the legal sufficiency of the earlier-filed complaints. This she has not done. Moreover, the majority of circuits that have addressed this issue have rejected reading such a

---

[39] *See Lujan*, 243 F.3d at 1188.

[40] *See* 318 F.3d 214, 218 (D.C. Cir. 2003).

[41] *See Lujan*, 243 F.3d at 1189; *see also Branch Consultants*, 560 F.3d at 378 ("Any construction of § 3730(b)(5) that focused on the details of the later-filed action would allow an infinite number of copycat qui tam actions to proceed so long as the relator in each case alleged one additional instance of the previously exposed fraud. This result cannot be reconciled with § 3730(b)(5)'s goal of preventing parasitic qui tam lawsuits.").

[42] *See* Docket No. 57-1, Exh. 2 at ¶¶ 112, 128 (alleging fraud occurred on most Corinthian campuses); Docket No. 57-1, Exh. 3 at ¶ 35 (referring to multiple Corinthian schools and alleging fraud occurred "nationwide").

[43] *See In re Wilshire Courtyard*, 729 F.3d at 1284.

requirement into the statute.[44]  Only the Sixth Circuit has adopted such a rule.[45]  While the Ninth Circuit has never directly addressed the issue, its ruling in *Lujan* suggests it would follow the majority approach.  In *Lujan*, the Ninth Circuit emphasized "[Section] 3730(b)(5)'s plain language does not contain exceptions."[46]  It held that a previously-filed complaint bars subsequent actions under Section 3730(b)(5), even if the earlier complaint is later dismissed, because "[d]ismissed or not, [the prior] action promptly alerted the government to the essential facts of a fraudulent scheme."[47]  This case is no different.[48]

***Second,*** Marion's conspiracy claim fails as matter of law.  While the Ninth Circuit has not addressed this issue directly, other circuits agree that conspiracy claims under the FCA are subject to the heightened pleading requirements of Rule 9(b).[49]  Rule 9(b) requires parties to "state with particularity the circumstances constituting the fraud."  To satisfy Rule 9(b), plaintiffs alleging conspiracy claims under Section 3729(a)(1)(C) must allege the existence of an agreement between the defendants to violate the FCA.[50]  This Marion does not do.  Her assertion that "Defendants

---

[44] *See United States ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 35 (1st Cir. 2013) ("Congress did not intend the first-to-file rule to incorporate Rule 9(b)'s heightened pleading standard."); *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011) ("We hold that first-filed complaints need not meet the heightened standard of Rule 9(b) to bar later complaints"); *Branch Consultants*, 560 F.3d at 378 n.10  (declining to treat determination of whether an earlier complaint satisfies Rule 9(b) as a prerequisite to treating the earlier complaint as a first-filed complaint under § 3730(b)(5)).

[45] *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005).

[46] *See Lujan*, 243 F.3d at 1187.

[47] *Id.* at 1188.

[48] While the Ninth Circuit in *Lujan* contemplated dismissal at the summary judgment stage, its rationale is equally applicable to complaints that may be dismissed on the pleadings.  Regardless of when the complaint is dismissed, the government is on notice of the alleged fraud once the complaint is filed.  Marion also argues the court should defer deciding whether Section 3730(b)(5) bars her claim until the Judicial Panel for Multidistrict Litigation rules on her motion to consolidate this case with related cases.  *See* Docket No. 64 at 12.  As that motion has been withdrawn, the issue is moot.  *See* Docket. No. 78.

[49] *See, e.g.*, *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (holding that FCA conspiracy claims must satisfy Rule 9(b)'s requirements); *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir.2008) (same); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (dismissing an FCA conspiracy claim on the basis of its failure to satisfy Rule 9(b)'s requirements).

[50] *See United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 899 (D.C. Cir. 2010) ("To hold HUK liable for conspiracy, the jury must have found (1) that an agreement existed

8
Case No. 5:12-cv-02067-PSG
ORDER GRANTING MOTION TO DISMISS

decided to take action to protect the fraud and Title IV violations being reported by Marion" merely states a legal conclusion.[51] There are no factual allegations about the time, place or specific language used by the defendants to form their agreement.[52] At best, Marion alleges some of the Individual Defendants circulated information about Marion's complaints.[53] This is not sufficient.[54]

## IV.

The Individual Defendants' motion to dismiss is GRANTED. Dismissal without leave to amend is only appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[55] Because the court cannot yet say that further amendment would be futile, leave to amend also is GRANTED. Any amended pleadings shall be filed within 21 days.

**SO ORDERED.**

Dated: July 24, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

to have false or fraudulent claims allowed or paid by the United States"); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) ("[T]o prove a False Claims Act conspiracy, a relator must show "(1) the existence of an unlawful agreement between defendants"); *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 310 (S.D.N.Y. 2011) ("[U]nder § 3729(a)(3) . . . a relator must allege that [1] the defendant knowingly conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States" (quoting *United States v. Sforza*, Case No. 00-cv-01307, 2000 WL 1818686, at *5 (S.D.N.Y. Dec. 12, 2000))); *see also Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990) (requiring civil conspiracy actions concerning fraud to "allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement").

[51] *See* Docket No. 53 at ¶ 44.

[52] *See id.*; *see also Grubbs*, 565 F.3d at 194 (treating a complaint that alleged specific language suggesting the existence of an agreement and the time and place of the alleged agreement's formation as sufficient to satisfy Rule 9(b)).

[53] *See* Docket No. 53 at ¶ 44.

[54] Because Marion fails to sufficiently plead the existence of an agreement, the court does not reach whether the intra-corporate conspiracy doctrine bars FCA conspiracy claims alleging agreement between employees of the same corporation.

[55] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).